UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

MOHAMMAD ALI ALIZADAH NAWAI,

        Petitioner/Defendant,

vs.

UNITED STATES OF AMERICA,

        Respondent/Plaintiff.

CIV Case No. 4:25-cv-00627-BLW
CR Case No. 4:22-cr-00029-BLW

**MEMORANDUM DECISION AND ORDER**

Petitioner Mohammad Ali Alizadah Nawai (Petitioner) has filed a motion to challenge his sentence under 28 U.S.C. § 2255. Civ. Dkt. 1; Crim Dkt. 102. The motion is now fully briefed and ripe for adjudication.

## BACKGROUND

Petitioner grew up in Afghanistan, became an orphan, and fled to Iran when he was about 12 years old. He never had an opportunity to attend school. He returned to Afghanistan but had to flee to Indonesia after the Taliban assumed control in Afghanistan. He and his family were granted asylum in the United States and were placed in Boise in 2019. Civ. Dkt. 1-1 at 5.

Petitioner had two cell phones at the time of the incidents, a Samsung and a

**MEMORANDUM DECISION AND ORDER - 1**

Vivo. Petitioner had 104 dating applications on the Vivo phone. Sometimes he used his real identity and sometimes a fake persona for his profile on the dating applications. It remains unknown what applications and information was on the Samsung phone.

On or about June 18, 2021, Petitioner accessed an adult dating site "Meet24" using a fake profile and began communicating with a person who claimed to be a 20-year-old woman named "Kat." During their conversations, Kat explained that she was 13 years old. Petitioner and Kat exchanged many sexually-explicit messages and discussed meeting in person. During the exchanges, Petitioner sent Kat a photograph of an adult woman having sex with a horse and photographs of an adult's penis.

After five days of chatting, Petitioner drove to Rupert, Idaho, to see if Kat was a real person. As he was driving through Rupert, a police officer stopped and detained him. At that time, he learned that "Kat" was actually undercover Rupert police officer Samuel Kuoha, who is a member of the Idaho Internet Crimes against Children task force. Petitioner was arrested and charged with three counts: attempted coercion and enticement of a child, attempted sexual exploitation of a child, and attempted transfer of obscene matter to a minor.

**MEMORANDUM DECISION AND ORDER - 2**

Petitioner alleges that his lawyer, federal defender Matthew Kinghorn, was ineffective for the following failures: (1) not gathering exculpatory data from the Samsung phone; (2) not calling an expert to testify to his state of mind at trial; and (3) not objecting to the prosecutor calling Petitioner a pedophile or child predator. Petitioner also asserts that the sum of the three errors constitutes cumulative error. Civ. Dkt. 1 at 2-23. Another federal defender, Heidi Johnson, conducted a portion of the trial but is not named in the § 2255 motion; the Court has included her performance in its review of the defense the Federal Defender Services of Idaho attorneys provided in this case.

**LAW AND PROCEDURES GOVERNING § 2255 CLAIMS**

Title 28 U.S.C. § 2255(a) provides for a collateral challenge to the imposition or length of a federal criminal sentence, based upon four grounds: "that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." *See also* Rule 1, § 2255 Rules.

The § 2255 motion must: "(1) specify all the grounds for relief available to the moving party" and "(2) state the facts supporting each ground." Rule 2(b), § 2255 Rules.

**MEMORANDUM DECISION AND ORDER - 3**

A court must dismiss a § 2255 motion "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief." Rule 4(b), § 2255 Rules.

"[A] district court may summarily dismiss a § 2255 motion only if the allegations in the motion, when viewed against the record, do not give rise to a claim for relief or are 'palpably incredible or patently frivolous.'" *United States v. Withers*, 638 F.3d 1055, 1062-63 (9th Cir. 2011), *quoting United States v. Schaflander*, 743 F.2d 714, 717 (9th Cir. 1984); *Baumann v. United States*, 692 F.2d 565, 571 (9th Cir. 1982) ("a hearing is mandatory whenever the record does not affirmatively manifest the factual or legal invalidity of the petitioner's claims"). Though conflicting sworn statements from a defendant and his trial attorney ordinarily trigger an evidentiary hearing where the defendant's version of the facts would entitle him to relief, the Ninth Circuit has held that "merely conclusionary statements in a [section] 2255 motion are not enough to require a hearing." *Hearst*, 638 F.2d at 1194 (quoting *Wagner v. United States*, 418 F.2d 618, 621 (9th Cir. 1969)); *see also United States v. Quan*, 789 F.2d 711, 715 (9th Cir. 1986) ("Where a prisoner's motion presents no more than conclusory allegations, unsupported by facts and refuted by the record, an evidentiary hearing is not required.").

Where credibility of parties and witnesses can be "'conclusively decided on the basis of documentary testimony and evidence in the record,'" no "evidentiary

**MEMORANDUM DECISION AND ORDER - 4**

hearing to receive testimony from the petitioner" is required. *United States v. Espinoza*, 866 F.2d 1067, 1069 (9th Cir. 1989) (citing *Watts v. U.S.*, 841 F.2d 275, 277 (9th Cir. 1988)).

"Rule 4(b) recognizes that summary dismissal of meritless motions under § 2255 is appropriate to relieve the district courts from the heavy burden which an obligation of hearings and findings on these motions would impose." *Abatino v. United States*, 750 F.2d 1442, 1444 (9th Cir. 1985).

## REVIEW OF INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL CLAIMS

### 1. Standard of Law

A defendant is entitled to effective assistance of counsel at all "critical stages" of the criminal process, including trial, sentencing, and direct appeal. *United States v. Leonti*, 326 F.3d 1111, 1116–17 (9th Cir. 2003). To establish a claim for ineffective assistance of counsel, Petitioner must prove (1) that counsel's performance was deficient; and (2) that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

Whether an attorney's performance was deficient is judged against an objective standard of reasonableness. *Id.* at 687-88. A reviewing court's inquiry into the "reasonableness" of counsel's actions must not rely on hindsight:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or

**MEMORANDUM DECISION AND ORDER - 5**

> adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

*Id.* at 689 (internal citations and quotation marks omitted).

The law is clear that "appointed counsel, and not his client, is in charge of the choice of trial tactics and the theory of defense." *United States v. Wadsworth*, 830 F.2d 1500, 1509 (9th Cir. 1987) (citing *Henry v. Mississippi*, 379 U.S. 443, 451 (1965)). In general, an attorney's tactical decisions about how to present a defense are not subject to an ineffective assistance of counsel attack. *Wildman v. Johnson*, 261 F.3d 832, 839 (9th Cir. 2001) ("disagreement with trial counsel's tactical decision cannot form the basis for a claim of ineffective assistance of counsel"). *See also Strickland,* 466 U.S. at 697–90 (mere criticism of trial tactics is not sufficient to support a charge of ineffective assistance of counsel); *Gustave v. United States,* 627 F.2d 901, 904 (9th Cir. 1980) (same).

**MEMORANDUM DECISION AND ORDER - 6**

Strategic decisions, such as the choice of a defense, "are virtually unchallengeable" if "made after thorough investigation of law and facts relevant to plausible options." *Id.* at 690. Moreover, an attorney who decides not to investigate a potential defense theory is not ineffective so long as the decision to forego investigation is itself objectively reasonable:

> [S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

*Id.* at 690-91.

Further, counsel is not deficient in an area where an investigation would not have been fruitful for the defense. There is a "strong presumption" that counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than "sheer neglect." *Yarborough v. Gentry*, 540 U.S. 1, 8, (2003) (per curiam).

The *Strickland* standard is "highly demanding" and requires consideration of counsel's "overall performance throughout the case," *Kimmelman v. Morrison*, 477 U.S. 365, 382; 386 (1986), and "the totality of the evidence before the judge or jury." *Strickland,* 466 U.S. at 695.

**MEMORANDUM DECISION AND ORDER - 7**

In evaluating an ineffective assistance of counsel claim, the court may consider either the performance or the prejudice component of S*trickland* first. *Id.* at 697. The Court need not consider one component if there is an insufficient showing of the other. *Id.*

### 2. Not Gathering Data from Samsung Phone to Support Entrapment Defense

When a defendant raises an entrapment defense, the government bears the burden of showing beyond a reasonable doubt that the defendant was not entrapped. Two ways the government can prove lack of entrapment are (1) predisposition, meaning the defendant was already inclined to commit the crime before being contacted by government agents; and (2) government agents did not induce the defendant to commit the crime. *See* Ninth Cir. Jury Instructions Comm., Manual of Model Criminal Jury Instructions § 5.2 (2026). "When a person, independent of and before government contact, is predisposed to commit the crime, it is not entrapment if government agents merely provide an opportunity to commit the crime." *Id*.

Petitioner asserts he told trial counsel there was evidence of entrapment on the Samsung and that Petitioner's fingerprint would unlock the phone, but his trial counsel never made an effort to retrieve the contents to support that defense. Crim.

**MEMORANDUM DECISION AND ORDER - 8**

Dkt. 102-1 at 11. Neither side was able to access the Samsung's contents, although the Samsung was manually reviewed by detectives. Civ. Dkt. 102-1 at 18-19.

Detectives and Petitioner's digital device forensic expert, Joshua Michel, were able to access the Vivo phone. A detective testified that he captured the entire sum of the communications found on the Vivo phone, which were duplicated, provided to the defense and Mr. Michel, and presented at trial. Crim. Dkt. 96 at 40-42.

Even assuming that trial counsel performed deficiently by not finding a way to retrieve the information on the Samsung phone, Petitioner has not provided any facts showing what information the Samsung phone contained and how it was exculpatory, other than to say "the information  in the Samsung would show that he was induced by 'Kat' to come to the meeting spot. Civ. Dkt. 1-1 at 7.

"Entrapment" does not mean merely suggesting a meeting spot. The evidence on the Samsung phone also must show that Kat induced Petitioner into the attempted coercion and enticement of a child, the attempted sexual exploitation of a child, and the attempted transfer of obscene matter to a minor. *See* Jury Instructions 16 to 18, Crim. Dkt. 72 at 20-24.

Further, the transcript from the Vivo phone captured the beginning of the conversations and shows that Petitioner had a predisposition to engage in sexual discussions and sharing sexual images with a minor—all before any suggestion by

**MEMORANDUM DECISION AND ORDER - 9**

Kat of anything sexual or where the two could meet. It was Petitioner, not Kat, who first began to discuss sex. Petitioner said: "You opened your own hole. My view is your cat. You do not want to answer me. You have had sex so far." Crim. Dkt. 96 at 56. He asked, "You like to have sex together?" *Id*.

Kat said she liked to swim and play volleyball. *Id*. at 69. Petitioner suggested: "We can play with your holes." Kat said, "I have never been fucked before." Petitioner says: "That means you do not want. The first fucked is delicious." *Id*. at 70.

When "Kat" suggested they meet to go swimming, Petitioner sent her a picture of a male penis and said, "You like my dick?" and "You can swim with a dick." Crim. Dkt. 97 at 9. Kat then said, "You are okay with me being 13 then?" And Petitioner responded, "We can enjoy little by little. Only I play with your hole and you play with my dick." *Id*. at 10. Petitioner does not assert that the foregoing was *not* an accurate version of how the communications began, or that the Samsung phone contained another string of conversation that would have undermined the conversations on the Vivo phone.

The investigation into the Vivo phone and the resulting transcript of the communications and pictures retrieved from that phone made Mr. Kinghorn's decision not to pursue the Samsung phone contents reasonable. The Vivo communications showed clearly that Petitioner understood Kat was 13 years old

**MEMORANDUM DECISION AND ORDER - 10**

and yet initiated and repeatedly engaged in sexual communications and sharing of obscenity with her.

Even if defense counsel were deficient in failing to access the contents of the Samsung phone, Petitioner does not provide any details of what the Samsung phone contained or how it supported an entrapment defense, other than his statement that it showed Kat invited him to the swimming area—which is already in the record from the Vivo phone. This ineffective assistance of counsel claim fails for lack of a showing of prejudice.

### 3.  Failure to Call a State of Mind Expert

Mr. Kinghorn's defense strategy was to convince the jury that the communications between Petitioner and Officer Kuoha were simply instances of two men, each posing as someone else, engaging in "online fantasy play and make-believe." Crim. Dkt. 96 at 14. Counsel argued that Petitioner was merely gathering information about Kat's true identity when he traveled to Rupert, because he did not believe that he was talking to a minor. Counsel argued that the purported sexual meet-up could not actually have taken place, because, had Kat been a real person, she would have been expecting Petitioner to be a 20-something Black man, like the fake profile depicted. *Id*. at 42-43.

Counsel told the jury that defense experts would discuss why and how deception occurs on the internet; counsel argued, "People aren't punished for

**MEMORANDUM DECISION AND ORDER - 11**

fantasies, only for crimes." *Id*. at  15-16. Counsel worked throughout the trial to show that these were just fantasy sexual conversations between two adult men who believed that each was posing as someone other than himself.

Petitioner asserts that Mr. Kinghorn should not have chosen this strategy without first investigating Petitioner's suggestions to Mr. Kinghorn that Petitioner might have cognitive impairments or disabilities that affected his ability to form the mens rea for the crimes charged. Crim. Dkt. 102-1 at 20-21.

Petitioner has produced no medical, educational, or mental health records or other documentation to suggest an inability to form the mens rea to commit the offenses charged. He has provided no affidavits from family members detailing how alleged cognitive or mental deficiencies affected his life. Although Petitioner had no formal education, he had a solid work history in Idaho before suffering a back injury. He was able to operate two cellular telephones, one containing 104 dating applications, and drive a car. His main language was Farsi, but he was able to communicate with others online in English. The probation officer conducting the presentence investigation report noted that Petitioner "displayed no signs of psychological dysfunction." Crim. Dkt. at 18.

Petitioner only questions *whether* he may have a cognitive or mental health condition. Petitioner knows his own life history, day-to-day functioning, and personal records and should have been able to produce such evidence as required

**MEMORANDUM DECISION AND ORDER - 12**

by § 2255 motion practice. Nothing in the record suggests that, had Mr. Kinghorn pursued such an investigation, it would have produced evidence to support a lack of mens rea.

The Government persuasively argues that Petitioner "would have to prove himself so mentally enfeebled that he didn't know he was talking to a child, a human, or that it was sexual. His conduct in this case, in communications, planning, coercing, all disproves any allegations of mental infirmities denying specific intent." Civ. Dkt. 3 at 13.

Because it was clear from the record that Petitioner was a fully-functioning adult, the Court also agrees with the Government that an expert's testimony as to Petitioner's mental state generally would have been inadmissible. "In a criminal case, an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense. Those matters are for the trier of fact alone." Fed. R. Evid. 704(b). Therefore, a mental health expert would have been of limited use.

Petitioner has not shown that any prejudice to his case resulted from his counsel failing to consult a mental health expert for a "state of mind" evaluation. Nothing in the record suggests that Petitioner could not understand what he was doing.

**MEMORANDUM DECISION AND ORDER - 13**

Petitioner is merely arguing that defense counsel should have chosen a different strategy—"Given that Defendant's mental state was at issue, counsel was ineffective in concentrating exclusively on the alibi that Defendant believed he was role playing and did not know 'Kat' was 13 years old." Civ. Dkt. 1-1 at 20. Defense counsel's strategy—supported by two experts and vigorous cross-examination of the office posing as "Kat"—was well within reasonable ways to defend this case. The *Strickland* Court observed: "There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." 466 U.S. at 689 (internal citations and quotation marks omitted).

Defense counsel called Mr. Michel to testify that he searched Petitioner's telephone and found no evidence that Petitioner had any type of child pornography or other instances of contacting minors on his phone. Mr. Michel testified that, given the hundreds of cases he had investigated, he was of the opinion that the Vivo's primary user's interest was online dating and chatting. Crim. Dkt. 97 at 70.

Defense counsel also called Dr. Michelle Drouin, an experimental psychologist, whose specialization "is on the confluence of technology and sexuality and how basically technology is influencing how we develop as humans and how we interact together." Crim Dkt. 97 at 75. She testified that people expect others to lie when engaged in online social media activities. *Id*. at 91. She also

**MEMORANDUM DECISION AND ORDER - 14**

testified that about 50 percent of people in a survey who had engaged in "sexting" admitted that they had been pretending or engaging in fantasy when talking to romantic interests online. *Id*. at 95. For people who met online, only 20 percent of them expected to do the things that they were mentioning in the chat, and only 15 percent of people who had been sexting with someone online expected that the first meeting would actually entail anything that they talked about in the chat. Crim. Dk. 96 at 167. Dr. Drouin also testified that Petitioner's communications with Kat "did not push or pursue a child fantasy." *Id*. at 109.

This choice of experts were appropriate for the defense theory of the case. In addition, defense counsel emphasized many points that supported this theory during cross-examination of Officer Kuoha. Petitioner has not shown that defense counsel performed deficiently by not calling a "state of mind" expert or clinical psychologist for that purpose, rather than an experimental psychologist for another purpose. Nor has Petitioner shown that a clinical psychologist or other "state of mind" expert would have discovered helpful information and would have been able to testify about Petitioner's state of mind at trial under Rule 704(b). He fails to meet either prong of *Strickland*.

**MEMORANDUM DECISION AND ORDER - 15**

### 4. Not Objecting to the Prosecutor Calling Petitioner a Pedophile or Child Predator

Petitioner asserts that Mr. Kinghorn was deficient for not objecting to the prosecutor's characterization of Petitioner as a pedophile, child predator, or child pornographer. He argues that, prior to the trial, he had not been diagnosed as a pedophile or being a child predator. The terms chosen by the prosecutor were harsh, but not beyond the bounds of fair argument based on the evidence presented in the case. *See United States v. Young*, 470 U.S. 1, 7 (1985) (observing that the prosecutor "may strike hard blows, he is not at liberty to strike foul ones").

Comments that leak into the "foul" zone include "commenting on the defendant's guilt and offering unsolicited personal views on the evidence." *Id*. Terms such as "sexual predator" and "sexual deviant" in cases where such terminology "furthers the government's theory of the case" are not prejudicial misconduct. *United States v. Bentley*, 561 F.3d 803, 811 (8th Cir. 2009); *Minter v. Lafler*, No. 5:07-CV-12138, 2010 WL 3504505, at *8 (E.D. Mich. Sept. 7, 2010) (the prosecutor's alleged "inflammatory namecalling"—referring to petitioner as a predator—did not deprive him of a fair trial).

While Petitioner may not have been formally diagnosed with pedophilia or being a child predator, that description is common language laypeople use for this type of behavior. The terminology fit the evidence of the case. The dating site

**MEMORANDUM DECISION AND ORDER - 16**

communications showed that Petitioner, a 40-year-old man, attempted to seduce a 13-year-old girl, sent her pictures of a penis, sent her pornography of a horse having sex with a woman, encouraged her to masturbate to open her vagina, told her first-time sex was "delicious," and asked her to send him nude pictures of herself—which is a request to produce child pornography.

When assessing an attorney's decision not to object, a court must be aware that there can be "both tactical and humanitarian reasons" for not objecting to the prosecutor's questions. *Bonin v. Vasquez*, 794 F. Supp. 957, 969 (C.D. Cal. 1992), *aff'd sub nom. Bonin v. Calderon*, 59 F.3d 815 (9th Cir. 1995). *See Burnett v. Collins*, 982 F.2d 922, 930 (5th Cir. 1993) ("[F]ailure to object to leading questions and the like is generally a matter of trial strategy as to which we will not second guess counsel.").

A reviewing court need not determine counsel's actual reason for making a particular trial decision, so long as that decision falls within the range of reasonable representation.[1] *See Morris v. California*, 966 F.2d 448, 456-57 (9th Cir. 1991) ("Under the circumstances of her case, an effective advocate could have reasonably decided not to object to the prosecutor's questions."). "A tactical

---

[1]    The Government's briefing states: "Mr. Kinghorn represented to the Government that he did not object, as he did not identify anything that was so clearly egregious is merited an objection." The Court cannot accept such representations without a sworn declaration from Mr. Kinghorn. The omission here is not fatal, however, because not objecting was within the range of reasonable defense strategy.

**MEMORANDUM DECISION AND ORDER - 17**

decision by counsel with which the defendant disagrees cannot form the basis of a claim of ineffective assistance of counsel." *Guam v. Santos*, 741 F.2d 1167, 1169 (9th Cir. 1984) (relying on *Strickland*, 466 U.S. at 690-91).

Many attorneys do not object because they do not want to draw additional attention to a prosecutor's comments. Because the evidence was within the range of fair argument as to pedophilia and child predator behavior, it would have been reasonable for counsel to refrain from objecting because a denied objection might have led the jury to believe that the Court approved of the terminology; a granted objection might have drawn undue attention to it.

As to the prejudice prong of *Strickland*, a petitioner must show a reasonable probability that, but for his trial counsel's failure to object, the outcome of his trial would have been different. Because the great weight of evidence was reasonably consistent with the terminology used, there is no reasonable probability that objections would have won an acquittal.

### 5. Cumulative Error

Petitioner argues that the foregoing errors together constitute cumulative error sufficient to invalidate his convictions. Crim. Dkt.102-1 at 22-23. To establish prejudice under *Strickland v. Washington*, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Williams v. Taylor*, 529 U.S. 362, 390-91

**MEMORANDUM DECISION AND ORDER - 18**

(2000). Thus, the nature of the *Strickland* standard itself assesses the cumulative effect of an attorney's serious errors. That is, a court may find cumulative prejudice from multiple deficiencies of counsel instead of addressing prejudice from individual deficiencies. *Harris By & Through Ramseyer v. Wood*, 64 F.3d 1432, 1439 (9th Cir. 1995). In this case, Petitioner has failed to show that, as to the three claims raised, trial counsel made errors at all or errors so prejudicial—either alone or cumulated—that the result of the proceeding would have been different. This claim fails.

## ORDER

**IT IS ORDERED:**

1. Defendant's § 2255 Motion (Civ. Dkt. 1; Crim Dkt. 102) is DENIED and DISMISSED with prejudice.

2. The Court does not find its resolution of this habeas matter to be reasonably debatable, and a certificate of appealability will not issue.



DATED: June 9, 2026

B. Lynn Winmill
U.S. District Court Judge

**MEMORANDUM DECISION AND ORDER - 19**